OREN A. BALLOU & others *vs.* INHABITANTS OF HOPKINTON

This court have jurisdiction in equity of a bill to restrain the letting off of water from a reservoir established for the benefit of the plaintiffs' mill.

Several owners of mills may maintain one bill in equity to restrain a stranger from letting off water from a reservoir which they have jointly erected for the purpose of supplying their mills in the dry season, without first establishing their title at law.

BILL IN EQUITY, filed on the 7th of June 1853, to restrain the defendants from letting off and wasting the water in a reservoir on Mill River, situated in the towns of Hopkinton, Milford and Upton. The bill alleged that the plaintiffs were and long had been the owners of certain real estate, mills and water privileges for the manufacture of cotton goods, situate on or near said

river, some in the town of Blackstone, and others in Cumber-
land (R. I.) ; that they, with other persons, were the owners of
and interested in said reservoir, which was created by the con-
struction and maintenance of a dam at the outlet of North Pond
in Milford, for the use and benefit of their said mills and water
privileges, and by means of which they were enabled to raise,
keep, reserve and retain a head of water for the use and benefit
of said mills and privileges during the dry season of the year ;
that they and the other owners of the reservoir had incurred great
expense in making, maintaining and repairing the reservoir, and
in purchasing land therefor, and had during the past winter and
spring retained and collected a large quantity of water; and that
such water would be needed to run said mills during the coming
dry season.

The bill also alleged that the defendants, pretending that
the water in the reservoir, as then raised, was flowing over and
upon a highway in Hopkinton, and claiming that the plain-
tiffs had no right to raise the water to its then height, threatened
to draw off a part of the water from the reservoir, (the water in the
river being then sufficient to supply said mills,) and were actually
letting off the water, and by their selectmen had raised the gate
at the reservoir dam, so that there was reason to apprehend that,
unless restrained therefrom, the water, or a large part of it, would
be discharged and wasted, and its accumulation prevented, before
any part of it could be beneficially used or enjoyed, whereby the
plaintiffs would sustain great loss and damage when they should
need the water in the coming dry season.

The bill further alleged that the plaintiffs had the right to
raise the water in the reservoir to its present height, that the de-
fendants had no right to let it off, and that the plaintiffs, in 1833,
at the time of the construction of their reservoir, obtained, from
the owners of the land flowed, the right to flow to the present
height, and had ever since exercised that right; that the water
had not been retained this season to a greater height than be-
fore ; and that said highway was located, laid out and accepted
in November 1835, long after the reservoir was built; so that
the defendants had no right to let off the water from the reservoir,

on account of any flowing over or upon the highway, so long as the plaintiffs continued to exercise only the rights of flowage which they had so long enjoyed.

The defendants demurred to the bill, on the ground that the plaintiffs had not shown such a case as entitled them to the relief prayed for, inasmuch as it did not appear that there was any impediment to an action at law being brought by the plaintiffs to ascertain their rights and the rights of the defendants relative to the river and dam in the bill mentioned ; or that, in any trial or action, the plaintiffs had obtained verdict or judgment for that purpose; or that there was, before or at the time of filing the bill, any authentic record of such right.

*E. Washburn*, for the defendants. The court have no jurisdiction of the case in equity, the act complained of being a mere trespass. 2 Story Eq. § 925. *Stevens* v. *Beekman*, 1 Johns. Ch. 318. *Coulson* v. *White*, 3 Atk. 21. If the court have jurisdiction, the relief prayed for is in the discretion of the court, and not a matter of right. *Charles River Bridge* v. *Warren Bridge*, 6 Pick. 400. *Roberts* v. *Anderson*, 2 Johns. Ch. 202. The case, as stated in the bill, is not one in which the court should grant an injunction until after the legal rights of the parties are settled, for several reasons: (1.) Because the act charged is a simple trespass, and done under a claim of right. *Attaquin* v. *Fish*, 5 Met. 148. *Stevens* v. *Beekman*, 1 Johns. Ch. 319. *Livingston* v. *Livingston*, 6 Johns. Ch. 500. *De Groot* v. *Receivers of Washington Banking Co.* 2 Green Ch. 198. *Smith* v. *Collyer*, 8 Ves. 89. Laussat's Fonblanque, 50, *note.* (2.) Because the injury is not alleged to be immediate, but prospective and contingent. *Charles River Bridge* v. *Warren Bridge*, 6 Pick. 401. *Reid* v. *Gifford*, 6 Johns. Ch. 19. *Harman* v. *Jones*, Cr. & Phil. 299. (3.) Because the injury, if any, is merely temporary, and may be fully compensated by a suit at law. Laussat's Fonblanque, 3, *note*, and cases cited. Jeremy Eq. 310. 2 Story Eq. § 925. *Bacon* v. *Jones*, 4 Myl. & Cr. 436. *Ripon* v. *Hobart*, 3 Myl. & K. 169. *Jerome* v. *Ross*, 7 Johns. Ch. 331. Rev. Sts. *c.* 106, § 6. *Bemis* v. *Clark*, 11 Pick. 454.

*C. Allen*, for the plaintiffs, was stopped by the court.

Ballou & others *v.* Inhabitants of Hopkinton.

SHAW, C. J.* The only questions in the present case are, whether this court have jurisdiction in equity, to restrain and prohibit the defendants from drawing off water from the plaintiffs' reservoir, established for the purpose of supplying the several mills of the plaintiffs, on one and the same stream ; and whether it is a fit case for the court to exercise that jurisdiction, rather than leave the plaintiffs to their actions at law, to recover damages for the injuries done them respectively in diminishing the water at their respective mills.

The case comes before us on a general demurrer, and therefore we are to take the facts set forth by the plaintiffs to be true, for the purpose of the present inquiry. The case set forth in the bill is alleged to consist in an injury done by the defendants to the incorporeal hereditaments of the several plaintiffs, in wasting the water which would flow to their mills when it would be useful and beneficial to them, and thereby impairing and diminishing their water power. This is technically a private nuisance, the appropriate remedy for which, at law, would be an action on the case for a disturbance. In such action at law, the remedy would be a verdict for nominal damages for the disturbance of the plaintiffs' right ; but if actual damage were proved to have been sustained, as the natural consequence of such interruption, then for such sum as would be a compensation therefor up to the time of the verdict, or of the action brought. Being by the rules of law a nuisance, we have no doubt that it is within the Rev. Sts. *c.* 81, § 8, *cl.* 8, giving this court jurisdiction in equity, " in all suits concerning waste and nuisance." *Boston Water Power Co.* v. *Boston & Worcester Railroad,* 16 Pick. 512.

The other question is, whether, taking the subject of the complaint as the plaintiffs have stated it, the bill shows that the plaintiffs have such a plain, adequate and complete remedy at law, that, according to the precedents and rules of equity, a bill ought not to be sustained, so that the demurrer is well taken to it on that ground.

Upon this question, the court are of opinion that the case

* THOMAS, J. did not sit in this case.

shows no such adequate and complete remedy at law as to deprive them of the right of proceeding in equity, and that the demurrer ought not to be sustained. Some of the more prominent reasons for this determination are these :

Although the plaintiffs are several owners of separate and distinct mills, injured by the alleged stoppage, diversion and waste of the water of Mill River, and to recover damages for which each owner must bring his several action at law to obtain a remedy for his particular injury, yet they have a joint and common right in the natural flow of the stream, and in the reservoir by which its power is increased, and a joint interest in the remedy, which equity alone can afford, in maintaining a regular flow of the water of the reservoir at suitable and proper times, so as best to subserve the equal rights of them all. The remedy in equity therefore would, by one decree in one suit, prevent a multiplicity of actions.

The remedy in equity would be more adequate and complete. At law, each plaintiff could recover only the damages then actually sustained, when the action is brought; whereas a decree in equity would look to the future, and prevent continuance of the injury and cause of damage, and thereby afford a more ample and complete remedy. *Boston Water Power Co.* v. *Boston & Worcester Railroad,* 16 Pick. 512. *Bemis* v. *Clark,* 11 Pick. 452.

In regulating the rights of mill owners and all others in the use of a stream, wherein numbers of persons are interested, equity is able, by one decree, to regulate their respective rights, to fix the time and manner in which water may be drawn, and within what limits it shall or shall not be drawn by all parties respectively ; and thus it is peculiarly adapted to the relief sought against such alleged nuisance and disturbance, and affords a more complete and adequate remedy than can be afforded by one or many suits at law. *Bemis* v. *Upham,* 13 Pick. 169. *Bardwell* v. *Ames,* 22 Pick. 333.        *Demurrer overruled.*